**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

WILLIAM PAUL SCHAETZEL,

    Plaintiff,

vs.

MERCY HEALTH SERVICES-IOWA, CORP. and MERCY MEDICAL CENTER-DUBUQUE,

    Defendants.

No. 17-CV-1007-LRR

**ORDER**

_____

### *TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*    *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*   *SUBJECT MATTER JURISDICTION.* . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.*   *SUMMARY JUDGMENT STANDARD* . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.*     *RELEVANT FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . *4*
        *A.*     *The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
        *B.*     *Overview of the Dispute* . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

*VI.*   *ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
        *A.*     *Count I: Defamation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
                *1*     *Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . . . *7*
                *2.*    *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
                *3.*    *Application*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
                      *a.*      *Libel per se* . . . . . . . . . . . . . . . . . . . . . . . . *9*
                      *b.*      *Libel per quod* . . . . . . . . . . . . . . . . . . . . . *10*
        *B.*     *Count II: Breach of Contract* . . . . . . . . . . . . . . . . . . . . . . *11*
                *1.*    *Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . . *11*
                *2.*    *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . *12*
                *3.*    *Application.* . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*
        *C.*     *Count III: Interference with Contract* . . . . . . . . . . . . . . . . . *13*
                *1.*    *Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . . *13*

   2. *Applicable law*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ***14***
   3. *Application*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ***15***
**VII. CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ***16***

## I. INTRODUCTION

The matter before the court is Defendant Mercy Health Services-Iowa, Corporation's[1] ("Mercy") "Motion for Summary Judgment" ("Motion") (docket no. 42).

## II. RELEVANT PROCEDURAL HISTORY

On April 28, 2017, Plaintiff William Paul Schaetzel filed a Complaint (docket no. 1) against Defendants Mercy and Does 1-10 (collectively, "Defendants") asserting the following claims: (1) defamation of character; (2) breach of contract; (3) injurious interference with contract; and (4) invasion of privacy. *See* Complaint at 3-6. On June 1, 2017, Mercy filed an Answer (docket no. 3) denying liability. On June 6, 2018, Schaetzel voluntarily dismissed Does 1-10 and Count IV of the Complaint. *See* June 6, 2018 Order (docket no. 48) at 1. On May 3, 2018, Mercy filed the Motion. On May 22, 2018, Schaetzel filed a Resistance (docket no. 46). On May 24, 2018, Mercy filed a Reply (docket no. 47). No party has requested oral argument and the court finds that oral argument is unnecessary. The matter is fully submitted and ready for decision.

## III. SUBJECT MATTER JURISDICTION

The court has diversity jurisdiction over the claims because complete diversity exists between the parties and Schaetzel alleges that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States.").

---

[1] Although listed as distinct defendants, the parties agree that Mercy Health Services-Iowa, Corporation is doing business as Mercy Medical Center-Dubuque. *See* Complaint ¶ 4; Motion at 1. Neither party has moved to amend the caption to correct this discrepancy.

## IV. *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show'" an absence of a genuine dispute as to a material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quotation omitted). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson*, 643 F.3d at 1042 (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has done so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

On a motion for summary judgment, the court must view the facts "in the light most favorable to the nonmoving party." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts' . . . ." *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita*, 475 U.S. at 586). Instead, "[t]o survive a motion for summary judgment, the nonmoving party must 'substantiate his allegations with sufficient

probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (second and third alterations in original) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)). Mere "self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r of Internal Revenue*, 614 F.3d 799, 807 (8th Cir. 2010).

## V. RELEVANT FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to the nonmoving party, and affording him all reasonable inferences, the uncontested material facts are as follows:

### A. The Parties

Schaetzel is a resident of Douglas County, Kansas. Complaint ¶ 2. Mercy is an Iowa corporation doing business as Mercy Medical Center-Dubuque in Dubuque County, Iowa. *Id.* ¶ 4.

### B. Overview of the Dispute

On April 17, 2015, the Iowa District Court for Dubuque County ("Iowa District Court") awarded Schaetzel temporary guardianship of his father-in-law, Harold Lindstrom. *Id.* ¶ 12. On that same date, Lindstrom was admitted to Mercy for treatment. *Id.* ¶ 14. On April 26, 2015, Schaetzel visited Lindstrom at Mercy. Statement of Undisputed Material Facts (docket no. 42-2) ¶ 6. During this visit he "used a ballpoint pen to puncture the air valve" of Lindstrom's feeding bottle. Appendix in Support of Motion (docket no. 42-3) at 18; *see also* Statement of Undisputed Facts ¶ 6. The attending nurse notified the nursing supervisor, Riley Miller, of what Schaetzel had done. Statement of Undisputed Material Facts ¶ 7.

Schaetzel admitted to Nurse Miller that he had punctured the air valve and stated that he would not interfere further with hospital medical equipment. *Id.* ¶ 8. Nurse Miller subsequently documented both that Schaetzel had punctured Lindstrom's air valve and the

4

conversation between himself and Schaetzel in Lindstrom's medical records. *Id*. ¶¶ 9-10. The statement reads in its entirety:

> Nursing staff phoned House Supervisor to speak to [Schaetzel] regarding [his] interruption and manipulation of the patient's tube feeding. When I approached [Schaetzel] two young women were scratching his head as if [he] were a dog and he was kicking his legs and giggling. I introduced myself and asked [Schaetzel] if he was interrupting the administration of the tube feeding. He readily admitted with a smile that he, "was a physician," that he, "is a type-a personality," that he "wanted it to go faster," that he, "thought it wasn't going fast enough," that he, "did think there was a vacuum within the bottle and so he punctured it and then all of the fluid started to . . . come out." I asked [Schaetzel] if he understood that was not acceptable. He said, "Yes, I shouldn't have done that." I asked [Schaetzel] if he intended to do that if he understood that was not acceptable. He said, "Yes, I shouldn't have done that." I asked [Schaetzel] if he intended to do that again. He said, "No, I won't." I asked [him] if he knew what to do in the future should he have any questions about the tube feeding infusion or think something ought to be done differently with the infusion. He said, "I suppose I could call the nurse, but . . . ok, I'll call the nurse in the future." [Schaetzel] then asked if we could please increase the rate of the tube feeding so that [Lindstrom] could get more tube feeding, "because he's been malnourished for so long." I explained that we do want to prevent the risk of aspiration[,] pneumonia, and suffocation and drowning by way of tube feeding, to which [Schaetzel] responded, "Yes, yes, yes, I understand all of that; after all, I am a physician." I thanked [Schaetzel] for his time and parted.

Appendix in Support of Motion at 41.

On April 28, 2015, Schaetzel contacted Mercy's pharmacy and spoke with an employee, Dr. Kate Kurt, regarding "the accuracy of the pumped feedings being administered to" Lindstrom. Complaint ¶¶ 30-31. Schaetzel asked to be transferred to the dietary department. *Id*. ¶ 31. Schaetzel contends that Dr. Kurt offered to contact the

5

dietary department herself, but never did so. *Id*. ¶¶ 32-33.

On May 1, 2015, a hearing was held in the Iowa District Court to determine whether Lindstrom continued to require a guardian. Appendix in Support of Motion at 42. On May 4, 2015, the Iowa District Court determined "that the temporary guardianship [was] in contravention of [Lindstrom's] wishes" and concluded that the temporary guardianship was no longer necessary. *Id*. at 43. Accordingly, the Iowa District Court granted a motion to terminate the temporary guardianship and removed Schaetzel from his position as temporary guardian. *Id*. at 43-44.

## VI. ANALYSIS

The Complaint contains three remaining claims. In Count I, Schaetzel alleges that Nurse Miller "falsely documented [a] conversation and [Schaetzel's] actions in the medical record" which "defamed [him] and cast him in a false light." Complaint ¶¶ 24-25. In Count II, Schaetzel contends that Dr. Kurt breached an oral contract made with Schaetzel wherein Dr. Kurt agreed to contact the dietary department regarding Lindstrom's feedings. *Id*. ¶¶ 31-33, 36. In Count III, Schaetzel asserts a claim of injurious interference with contract. *Id*. ¶¶ 39-44. The court shall address each claim in turn.

### A. Count I: Defamation

Schaetzel alleges that Nurse Miller "falsely documented [a] conversation and [Schaetzel's] actions in the medical record" which "defamed [him] and cast him in a false light."[2] *Id*. ¶¶ 24-25. He asserts that, as a result, his "personal and professional reputation . . . was severely damaged." *Id*. ¶ 25. Schaetzel further asserts that he was "questioned about his manipulation of the feeding solution" at the May 1, 2015 hearing on

---

[2] Although Schaetzel includes the term "false light" within his defamation claim in Count I, he does not assert that including this term is intended to constitute a distinct claim. *See generally* Complaint. Nor does Schaetzel argue in his Resistance that he is raising a separate "false light" claim. *See* Resistance at 2. Therefore, the court shall address Count I exclusively as a defamation claim.

6

the temporary guardianship, after which the Iowa District Court terminated the temporary guardianship. *Id.* ¶¶ 26-28.

### 1. *Parties' arguments*

Mercy contends that it is entitled to summary judgment on Schaetzel's defamation claim. Mercy argues that the statement does not constitute defamation per se and that, therefore, "Schaetzel must prove [that] he sustained actual damages." Brief in Support of Motion (docket no. 42-1) at 1-3. Mercy asserts that Schaetzel is unable to establish that he suffered any reputational harm due to Nurse Miller's note and, thus, his claim fails as a matter of law. *Id.* at 3. Schaetzel contends that the statements contained in Nurse Miller's note constitute defamation per se and, therefore, injury is presumed. *See* Resistance at 2.

### 2. *Applicable law*

"Defamation includes the twin torts of libel and slander. Libel involves written statements, while slander involves oral statements." *Bierman v. Weier*, 826 N.W.2d 436, 444 (Iowa 2013) (quoting *Kiesau v. Bantz*, 686 N.W.2d 164, 174 (Iowa 2004) *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016)). "Iowa courts recognize two types of libel: 'libel per se and libel per quod.'" *Doe v. Hagar*, 765 F.3d 855, 860 (8th Cir. 2014) (quoting *Schlegel v. Ottumwa Courier, Inc.*, 585 N.W.2d 217, 222 (Iowa 1998)). "Statements that have 'a natural tendency to provoke the plaintiff to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefit of public confidence or social intercourse' are defamatory as a matter of law and can give rise to a claim for libel per se." *Id.* at 860-61 (quoting *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996)). "Statements qualifying as libel per se have been described in four general categories: 'imputation of (1) certain indictable crimes, (2) loathsome disease, (3) incompetence in occupation, and (4) unchastity.'" *Home Show Tours, Inc. v. Quad City Virtual, Inc.*, 827 F. Supp. 2d 924, 941 (S.D. Iowa 2011)

7

(quoting *Barreca v. Nickolas*, 683 N.W.2d 111, 116 (Iowa 2004)). "In statements that are libelous per se, falsity, malice, and injury are presumed and proof of these elements is not necessary." *Doe*, 765 F.3d at 861 (quoting *Kiesau*, 686 N.W.2d at 175).

"On the other hand, '[a] statement is libelous per quod if it is necessary to refer to facts or circumstances beyond the words actually used to establish the defamation.'" *Sykes v. Hengel*, 394 F. Supp. 2d 1062, 1072 (S.D. Iowa 2005) (alteration in original) (quoting *Johnson*, 542 N.W.2d at 510). To establish a prima facie case of libel per quod, "the plaintiff must show the defendant '(1) published a statement that (2) was defamatory (3) of and concerning the plaintiff, and (4) resulted in injury to the plaintiff.'" *Kiesau*, 686 N.W.2d at 175 (quoting *Johnson*, 542 N.W.2d at 510). "[A] plaintiff must prove that [the] defamatory statements were false, made with malice, and caused damage." *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996). "The truth of the statement is an absolute defense." *Id.*; *see also King v. Sioux City Radiological Grp., P.C.*, 985 F. Supp. 869, 878 (N.D. Iowa 1997) (stating that "the truth of the libelous statements remains as an absolute defense to liability for those statements even if the statements constitute libel per se" (citations omitted)).

### 3. Application

Schaetzel does not specify which particular statements in the note are allegedly defamatory. *See generally* Complaint. In the Complaint, Schaetzel highlights questioning regarding "his manipulation of the feeding solution, and the events as recorded . . . by [Nurse] Miller" during the May 1, 2015 hearing before the Iowa District Court. *Id.* ¶ 27. In the Resistance, Schaetzel points specifically to the statement that "when [Nurse Miller] approached [Schaetzel] two young women were scratching his head as if [he] were a dog and he was kicking his legs and giggling." Resistance at 2. Therefore, the court shall address each of these statements in turn.

### a. *Libel per se*

The court finds that Nurse Miller's statements about his conversation with Schaetzel regarding Schaetzel's admitted manipulation of the feeding bottle do not constitute libel per se. The statements include Schaetzel's admission that he "did think there was a vacuum within the bottle and so he punctured it." Appendix in Support of Motion at 41. However, these statements do not have "a natural tendency to . . . expose [Schaetzel] to public hatred, contempt, or ridicule" as is required to establish libel per se. *Johnson*, 542 N.W.2d at 510 (quoting *Prewitt v. Wilson*, 103 N.W. 365, 367 (Iowa 1905)). The statements simply recount Schaetzel's admission that he punctured the feeding bottle and his explanation for so doing. Additional context would be necessary to impute any defamatory meaning to these statements. *Compare Suntken v. Den Ouden*, 548 N.W.2d 164, 166-67 (Iowa Ct. App. 1996) (finding derogatory comments written on the face of three checks stating "child support," "unemployment ex-wife," "breast implants" and "psycho" were not libel per se), *and Galloway v. Zuckert*, 447 N.W.2d 553, 555 (Iowa Ct. App. 1989) (concluding that the statements "that [the defendant] was not able to do business with [the plaintiff] 'on a handshake' or that he did 'an about-face,'" were not libel per se because they were "not synonymous with calling the [plaintiff] a liar nor do they impute dishonesty to any great degree"), *with McFarland v. McFarland*, 684 F. Supp. 2d 1073, 1087 (N.D. Iowa 2010) (concluding that "an email communication [sent] to over 300 households" which accused the plaintiff "of being physically abusive" was libel per se), *and Spencer v. Spencer*, 479 N.W.2d 293, 296 (Iowa 1991) ("It is libel per se to make published statements accusing a person of being a liar, a cheater, or thief."), *and Vinson v. Linn-Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 115-16 (Iowa 1984) (accusing plaintiff of falsifying time cards is libel per se). The statements alone do not "attack . . . the integrity and moral character of" Schaetzel. *Vinson*, 360 N.W.2d at 116. Therefore, the court shall address the statements as libel per quod.

9

As to Nurse Miller's statement that "two young women were scratching [Schaetzel's] head as if [he] were a dog and he was kicking his legs and giggling," the court finds that this statement does not constitute libel per se. Appendix in Support of Motion at 41. Even assuming, as Schaetzel contends, that these words "were intentionally chosen to ridicule [him]," that is insufficient to render statements libel per se. Resistance at 2. The statement does not have "a natural tendency to . . . expose [Schaetzel] to public hatred, contempt, or ridicule." *Johnson*, 542 N.W.2d at 510 (quoting *Prewitt*, 103 N.W. at 367). That Schaetzel may personally have considered the statement to be embarrassing is insufficient to render it libel per se. *See, e.g.*, *Suntken*, 548 N.W.2d at 169 ("Statements which are merely annoying or embarrassing . . . are not defamatory.") (Habhab, J., specially concurring) (emphasis and quotation omitted). Further, Schaetzel's Resistance demonstrates that additional context is necessary to impute any defamatory connotation to this statement. *See Bierman*, 826 N.W.2d at 444 ("[A] statement would be deemed libel per quod where the words in themselves were not considered sufficiently harmful to the plaintiff without further context."). Therefore, the court shall address both statements as a libel per quod claim.

    b. *Libel per quod*

As stated above, libel per quod requires the plaintiff to show that the defendant made defamatory statements that "resulted in injury to the plaintiff." *Kiesau*, 686 N.W.2d at 175 (quoting *Johnson*, 542 N.W.2d at 510). The court finds that Schaetzel has failed to establish a genuine issue of material fact as to whether he was injured by Nurse Miller's allegedly defamatory statements. In the Complaint, Schaetzel contends that, as a result of the allegedly defamatory statements, his "personal and professional reputation . . . was severely damaged." Complaint ¶ 25. However, as noted by Mercy, Schaetzel admits that he is not aware of any Mercy employee who actually read the note and no person has ever told him that they read the note. *See* Appendix in Support of Motion at 23. Rather,

Schaetzel simply relies on his unsubstantiated belief that his sisters-in-law may have read the statement. *See id.* at 24-45. Schaetzel cannot point to any "transmission of [the] derogatory statements." *See Kiseau*, 686 N.W.2d at 175. Further, any dissemination of the statement solely by Schaetzel cannot constitute defamation. *See* Appendix in Support of Motion at 28 (stating that Schaetzel told his wife about the contents of the statement); *see also Thomas v. St. Luke's Health Sys., Inc.*, 869 F. Supp. 1413, 1442 (N.D. Iowa 1994) ("Where there is no communication to the general public, but instead the statements are made only to the plaintiff, and the plaintiff disseminates the statements, there is no defamation.").

Schaetzel points the court to no evidence establishing a cognizable injury that would permit a finding in his favor. *See Kiesau*, 686 N.W.2d at 175 ("In cases of libel per quod, 'a plaintiff must ordinarily prove some sort of cognizable injury, such as injury to reputation.'" (quoting *Johnson*, 542 N.W.2d at 513)). Schaetzel has presented no evidence save his own self-serving statements that his reputation was denigrated as a result of the allegedly defamatory statements. *See id.* ("Defamation is an impairment of a relational interest; it denigrates the opinion which others in the community have of the plaintiff and invades the plaintiff's interest in his reputation and good name." (quoting *Schlegel*, 585 N.W.2d at 221)). Nor does Schaetzel point to any impairment in his relational interests. Without any substantiating evidence, Schaetzel's claim cannot survive summary judgment.

Accordingly, the court shall grant the Motion as to Count I.

### B. *Count II: Breach of Contract*

Schaetzel contends that Dr. Kurt breached an oral contract made with Schaetzel wherein Dr. Kurt agreed to contact the dietary department regarding Lindstrom's feedings. Complaint ¶¶ 31-33.

#### 1. *Parties' arguments*

Mercy contends that it is entitled to summary judgment on the breach of contract

claim because it pertains to a "contract[] to which [Schaetzel]—as an individual—was not a party."[3] Brief in Support of Motion at 4. Mercy asserts that any claim under this contract is "personal to Lindstrom's estate, [and] any action based upon [it] would need to be brought by a representative of the estate." *Id*. at 5. Mercy argues that, because Schaetzel was not a party to the contract and brought this action in his individual capacity, he "lacks capacity to bring forth" this claim. *Id*. Schaetzel contends that when he entered into the contract he "was not acting as [Lindstrom's] guardian but rather as an interested party as a relative . . . who cares for their loved one." Resistance at 2. Therefore, Schaetzel asserts that he is the proper party to bring this claim.

### 2. *Applicable law*

"[T]he federal court is bound by state law in determining the capacity of an individual to sue in a representative capacity." *Mann v. De Moss*, 323 F. Supp. 1126, 1127 (S.D. Iowa 1971). Thus, the law of the state of Iowa governs the determination of whether Schaetzel has the capacity to bring an action for breach of the alleged contract under Count II. "A party must have the capacity to sue in order to commence and maintain a lawsuit." *Estate of Dyer v. Krug*, 533 N.W.2d 221, 223 (Iowa 1995). The "test for standing is that 'the complaining party have a specific, personal, and legal interest in the litigation, and be injuriously affected.'" *Huffey v. Lea*, 491 N.W.2d 518, 522 (Iowa 1992) (quoting *Hawkeye Bancorporation v. Iowa Coll. Aid Comm'n*, 360 N.W.2d 798, 801 (Iowa 1985)).

### 3. *Application*

Schaetzel does not dispute that he "brings this suit as an individual and not as the authorized representative of . . . Lindstrom's estate." Statement of Undisputed Facts ¶ 4;

---

[3] Mercy does not dispute that the phone call between Schaetzel and Dr. Kurt constituted an oral contract. While the court is dubious that this conversation can be construed as an oral contract, it shall assume an oral contract existed since the issue is undisputed.

Response to Statement of Undisputed Facts (docket no. 45) ¶ 4. He does, however, contend that "[t]he agreement for the breach of contract claim" at issue in Count II "was between [himself] and Dr. Kurt." Response to Statement of Undisputed Facts ¶ 18. Schaetzel states that Lindstrom "was to be the beneficiary of [the] verbal contract." *Id*.

Schaetzel's contention is undermined by his own sworn statements. Schaetzel stated that he and Dr. Kurt were parties to the contract, but subsequently clarified that when he referred to himself he "mean[t] in [his] capacity as the guardian of [his] father-in-law." Appendix in Support of Motion at 31. Schaetzel has presented no evidence, save his own self-serving statements, to establish that he entered into the contract in his individual capacity rather than in his capacity as guardian for Lindstrom. Since Schaetzel does not bring this claim on Lindstrom's behalf, it fails as a matter of law.

Accordingly, the court shall grant the Motion as to Count II.

### C. Count III: Interference with Contract

Schaetzel asserts a claim of injurious interference with contract. Complaint ¶¶ 38-44. Schaetzel contends that the court order appointing him temporary guardian of Lindstrom constituted a contract between himself and the Iowa District Court.[4] *See* Resistance at 3. He further asserts that Mercy interfered with this contract by allegedly communicating ex parte with the Iowa District Court, causing the Iowa District Court to deny his request to transfer Lindstrom to a different hospital. Complaint ¶¶ 41-43.

#### 1. *Parties' arguments*

Mercy contends that it is entitled to summary judgment on this claim because "[t]he type of distress Schaetzel seeks damages for does not constitute severe emotional

---

[4] Mercy does not challenge Schaetzel's claim that the guardianship order constitutes a contract. Although the court doubts that the Iowa District Court's guardianship order constituted a contract between the Iowa District Court and Schaetzel, it shall not address the issue because it is not raised by the parties.

distress."[5] Brief in Support of Motion at 5 (quotations omitted). Schaetzel contends that he was harmed by the events alleged in Count III in that they "weighed heavily on [his] heart." Statement of Undisputed Facts ¶ 27 (alteration in original); *see also* Resistance to Statement of Undisputed Facts ¶ 27.

### 2. *Applicable law*

Under Iowa law, "[i]f the defendant induces or otherwise causes [a] third person not to perform the contract, the defendant is liable to the other person (plaintiff) for damages from the failure of the third person to perform the contract." *RTL Distrib., Inc. v. Double S Batteries, Inc.*, 545 N.W.2d 587, 590 (Iowa Ct. App. 1996); *see also* Restatement (Second) of Torts § 766 ("One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."). The elements of a claim of intentional interference with a contract are:

> (1) plaintiff had a contract with a third-party; (2) defendant knew of the contract; (3) defendant intentionally and improperly interfered with the contract; (4) the interference caused the third-party not to perform, or made performance more burdensome or expensive; and (5) damage to the plaintiff resulted.

---

[5] Mercy also contends that it is entitled to summary judgment on this claim because Schaetzel "lacks the capacity to bring suit" since the contract upon which the claim is based "was between Schaetzel—as Lindstrom's agent—and Mercy." Brief in Support of Motion 3-4. However, Mercy's representation as to the contract's parties is belied by the record. *See* Appendix at 32 ("The contract that I had with the court in guardianship of the ward."); *see also* Resistance at 3 (stating that the "contract referred to [in Count III] involves the appointment by the [Iowa] District Court of temporary guardianship"). Because Schaetzel alleges that the contract was between himself and the Iowa District Court, Mercy's argument does not provide a basis to grant the motion.

*Green v. Racing Ass'n of Cent. Iowa*, 713 N.W.2d 234, 243 (Iowa 2006) (quoting *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 399 (Iowa 2001)). "Iowa law permits the award of damages for emotional distress in an action for intentional interference with contract." *In re Knickerbocker*, 827 F.2d 281, 291 (8th Cir. 1987); *see also Peterson v. First Nat'l Bank of Iowa*, 392 N.W.2d 158, 167 (Iowa Ct. App. 1986) (distinguishing between "a theory of intentional infliction of emotional distress" and "tort theories under which damages could be awarded for emotional distress").

### 3. Application

Assuming, without deciding, that the Iowa District Court's guardianship order constituted a contract between the Iowa District Court and Schaetzel, the court finds that Schaetzel has failed to present evidence that he suffered damage as a result of Mercy's alleged interference. Schaetzel does not point to any evidence supporting his assertion of emotional distress. Rather, Schaetzel admits that "the full extent of [his] emotional distress as a consequence of the events alleged in Count III," and thus the full extent of his alleged damages, "is that [the events] 'weighed heavily on [his] heart.'" Statement of Undisputed Facts ¶ 27 (second alteration in original); *see also* Resistance to Statement of Undisputed Facts ¶ 27.

Although emotional distress damages are permissible, the court finds that Schaetzel's assertion that the alleged interference weighed heavily on his heart is insufficient to establish a genuine issue of material fact as to the existence of damages for emotional distress. *Compare In re Knickerbocker*, 827 F.2d at 291 (concluding that the plaintiff's "general testimony regarding strain on the entire family [was], without more, insufficient to support an award of damages for emotional distress") *with Nesler v. Fisher & Co.*, 452 N.W.2d 191, 199-200 (Iowa 1990) (concluding that "[t]here was sufficient evidence . . . from which a jury could conclude that [the plaintiff] suffered severe emotional distress from the interference" with the contract where the "evidence showed

15

that [the plaintiff] experienced marital difficulties, depression, and that he attempted suicide"). Since Schaetzel cannot establish that he suffered damages as a result of the alleged interference, his claim fails as a matter of law.

Accordingly, the court shall grant the Motion as to Count III.

### VII. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED**:

(1) Mercy's Motion for Summary Judgment (docket no. 42) is **GRANTED**;

(2) The Clerk of Court is **DIRECTED** to enter judgment in favor of Mercy and against Plaintiff William Paul Schaetzel; and

(3) The Clerk of Court is **DIRECTED** to terminate all outstanding motions.

The Final Pretrial Conference is **CANCELED** and the trial date is **VACATED**.

**IT IS SO ORDERED.**

**DATED** this 26th day of June, 2018.

_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA